UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-696-DMG-KK** | Date: | February 13, 2017 |
| Title: | *Norman Halstead, et al. v. Pacific Gas and Electric Company PG and E, et al.* | | |

Present: The Honorable  KENLY KIYA KATO, UNITED STATES MAGISTRATE JUDGE

| DEB TAYLOR | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (In Chambers) Granting Plaintiffs' Motion for Leave to File Third Amended Complaint [Dkt. 66] and Denying Defendant's Motion to Dismiss as Moot [Dkt. 47]

## I.
## INTRODUCTION

Plaintiffs Norman Halstead and Aquilla Frederick ("Plaintiffs"),[1] proceeding pro se, filed a Second Amended Complaint ("SAC") alleging defendants Pacific Gas and Electric Company and Does 1 through 10 violated 42 U.S.C. §§ 1983 and 1985(3). Defendant Pacific Gas and Electric Company ("Defendant") filed a Motion to Dismiss the SAC ("Motion to Dismiss"). Plaintiffs then filed a Motion for Leave to File a Third Amended Complaint ("Motion to Amend"). The Court finds both motions suitable for decision without a hearing. For the reasons set forth below, (1) Defendant's Motion to Dismiss is DENIED as moot, and (2) Plaintiffs' Motion to Amend is GRANTED.

## II.
## PROCEDURAL HISTORY

On April 13, 2016, Plaintiffs filed a civil rights complaint ("Complaint") alleging Defendant violated (1) the Safe Drinking Water Act ("SDWA"); and (2) Plaintiffs' civil rights under 42 U.S.C. §§ 1983, 1985(3), and 1986. See ECF Docket No. ("Dkt.") 1, Compl. Plaintiffs

---

[1] The Court will address Plaintiff Gary Halstead in a separate order.

alleged Defendant poisoned "not only . . . the aquifer beneath the Plaintiffs' real property located in Hinkley, CA 92347, but virtually . . . all aquifers beneath said town" with "byproducts Arsenic and Uranium . . . in the ground drinking water." Id. at 4.

On June 10, 2016, Plaintiffs filed a First Amended Complaint ("FAC") alleging Defendant violated Plaintiffs' civil rights under 42 U.S.C. §§ 1983 and 1985(3). Dkt. 29, FAC. Plaintiffs alleged Defendant's remedial operations to remove hexavalent chromium from Hinkley's Aquifer, to which Plaintiffs and "similarly situated Plaintiff(s)" are connected "via private individual water well[s]," "has further caused poisoning of Plaintiff(s) private well with ARSENIC or URANIUM, way over the Federal and State EPA's limits, by injecting chemicals." Id. at 7, 12. Plaintiffs claimed to have suffered "irreparable harm health injuries as a direct result of being poisoned with toxic chemicals by Defendant's operations." Id. at 6.

On June 28, 2016, Defendant filed a Motion to Dismiss the FAC. Dkt. 30. On August 2, 2016, the Court granted Defendant's Motion to Dismiss the FAC finding the SDWA preempts Plaintiffs' civil rights claims under 42 U.S.C. §§ 1983 and 1985(3), but granting Plaintiffs leave to amend. Dkt. 43.

On August 18, 2016, Plaintiffs filed the SAC once again alleging Defendant violated Plaintiffs' civil rights under 42 U.S.C. §§ 1983 and 1985(3). Dkt. 44, SAC; Dkt. 45, Memorandum of Points and Authorities; Dkt. 46, Decl. in support of SAC. Plaintiffs alleged Defendant's "failed remedial operations," i.e., Defendant's "purported" removal of hexavalent chromium "from the poisoned ground drinking water," caused "substantial poisoning of ground drinking and potable water, with the by-products Arsenic and Uranium" and that Defendant "conced[ed] (confess[ed]) of poisoned ground drinking water with URANIUM, way over the legal limits." SAC at 12, 15. Plaintiffs further alleged Defendant poisoned Plaintiffs' drinking water by "injecting 'denature ethanol' ['E85 GASOLINE']." Id. at 13 (brackets in original). Plaintiffs also alleged the State of California Water Board and the Lahontan Regional Water Quality Control Board have never checked Plaintiffs' well or aquifer and have refused to acknowledge that Plaintiffs' wells are contaminated with Arsenic and/or with Uranium. Id. at 5.

On September 1, 2016, Defendant filed the instant Motion to Dismiss the SAC. Dkt. 47, MTD. Defendant argues: (1) the SDWA preempts Plaintiffs' claims under 42 U.S.C. §§ 1983 and 1985(3); (2) Plaintiffs fail to allege discrimination in their 42 U.S.C. § 1985(3) claim; (3) Plaintiffs' claims are untimely; and (4) Plaintiffs fail to allege "they suffered injury as a result of [Defendant]'s concerted action with government actors" in their 42 U.S.C. § 1983 ("Section 1983") claim. Id. at 2-10. On September 15, 2016, Plaintiffs filed an Opposition. Dkt. 55, MTD Opp.; Dkt. 57, Memorandum of Points and Authorities; Dkt. 59, Supplemental Memorandum of Points and Authorities. On September 22, 2016, Defendant filed a Reply. Dkt. 61, MTD Reply.

On November 8, 2016, Plaintiffs filed the instant Motion to Amend with a proposed Third Amended Complaint ("Proposed TAC"). Dkt. 66, Mot. to Amend; Dkt. 66-1, Proposed TAC; Dkt. 69, Memorandum of Points and Authorities in support of Motion to Amend and TAC ("TAC Mem."). Plaintiffs incorporate the Memorandum filed in support of their Motion to Amend into the Proposed TAC. See Proposed TAC at 3; TAC Mem. at 11. The Proposed TAC again seeks relief pursuant to Section 1983 alleging Defendant's "Agricultural Operations," i.e., "failed remedial operations," caused Plaintiffs' ground drinking water to be poisoned with the

by-products Arsenic and Uranium. Proposed TAC at 6. Plaintiffs explain Defendant's irrigation of its alfalfa fields using the "ground drinking water" caused Uranium and Arsenic to "seep[] back down to the aquifer, and did poison[] the rest of the drinking water in such aquifer." Id. at 10. While Plaintiffs allege the various regulatory agencies do not regulate private wells, they attach a letter from the Executive Officer of the State of California Lahontan Regional Water Quality Control Board ("State Board") stating the State Board has continuing authority to require Defendant to clean up the discharges from the compressor station site and expressing hope that the "citizens of Hinkley can dispel health concerns about their community" because the "levels of chrom-6 in current residential wells are much lower (better) than the state's drinking water standard." TAC Mem., Ex. E. Plaintiffs allege the State Board "is protecting the Defendant from prosecution, by avoiding to order the Defendant to clean and abate their byproducts Arsenic and Uranium from ground drinking water . . . because Defendant has paid said State of California Board millions of dollar, money talks and everyone else walks." TAC Mem. at 13. On November 28, 2016, Defendant filed an Opposition to the Motion to Amend. Dkt. 77, Opp. On December 2, 2016, Plaintiffs filed a Reply. Dkt. 79, Reply.

This matter is thus submitted for decision.

### III.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides: "The court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment" leave to amend should be "freely given." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

### IV.
### DISCUSSION

**A.   THE COURT FINDS THE MEET AND CONFER EFFORTS BY BOTH PARTIES WAS DEFICIENT**

As a preliminary matter, the Court finds the parties' meet and confer efforts regarding both motions woefully inadequate. The parties are both cautioned they must strictly comply with the meet and confer requirements set forth in the Local Rules. Local Rule 7-3 requires counsel contemplating filing a motion shall first contact opposing parties "to discuss thoroughly, ***preferably in person***, the substance ***of the contemplated motion*** and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion." L.R. 7-3 (emphasis added). Additionally, sanctions are available when the parties fail to adequately comply with the applicable Local Rules (e.g., Local Rules 7-3 and 37-1's requirement of an adequate pre-filing conference of counsel). L.R. 37-4, 83-7.

The Court does not expect the parties to be able to resolve the entire case during a meet and confer session. Contrary to Plaintiffs' apparent belief, the purpose of the meet and confer requirement is to discuss a potential motion. Accordingly, Plaintiffs shall not condition meet and confer conferences on Defendant's willingness to discuss settlement of the entire action. The

Court does, however, expect the parties to discuss the substance of any proposed motion before it is filed in order to determine whether there is truly a need for court intervention. On September 2, 2016, Plaintiffs filed a "Notice" complaining about and attaching Defendant's meet and confer correspondence. Dkt. 49. On January 11, 2017, Plaintiffs filed a "Declaration and Meet and Confer Status" again appearing to complain about Defendant's meet and confer efforts. Dkt. 88. There is no need for such separate filings. Because the meet and confer should occur before the filing of the motion or opposition, the party filing the motion should make any appropriate representations at the time of filing. The Court is unimpressed by the parties' apparent intransigence. Future violations of the meet and confer requirements will result in sanctions.

### B. THE COURT FINDS NO UNDUE DELAY, PREJUDICE, OR BAD FAITH

"[D]elay alone is not sufficient to justify the denial of a motion requesting leave to amend." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987) (citing Hurn v. Ret. Fund Trust of Plumbing, Heating & Piping Indus. of S. California, 648 F.2d 1252, 1254 (9th Cir. 1981)). Moreover, "[t]he party opposing amendment bears the burden of showing prejudice." Id. A common indicator of prejudice is when amendment creates "[a] need to reopen discovery and therefore delay the proceedings." Lockheed Martin Corp. v. Network Sols., Inc., 194 F.3d 980, 986 (9th Cir. 1999) (noting amendments seeking to add complaints and parties would require substantial additional discovery after discovery had closed and several months after the deadline to amend had passed).

Defendant argues Plaintiffs' "contradiction of the allegations in the Complaint shows bad faith" and cites Union Pac. R.R. Co. v. Coast Packing Co., 236 F. Supp. 2d 1130, 1139 (C.D. Cal. 2002) in support of its position. Dkt. 77, Opp. at 8-11. In Union Pacific, the court denied plaintiff's request for leave to amend finding plaintiff's delay was unreasonable because plaintiff waited until after discovery had closed and defendant had filed its motion for summary judgment before seeking leave to file an amended complaint that contradicted prior allegations. Union Pac. R.R. Co., 236 F. Supp. 2d at 1139. The court found the delay was both prejudicial and indicative of bad faith. Id.

Here, Plaintiffs waited until after the Motion to Dismiss was fully briefed before filing the Motion to Amend rather than simply requesting leave to amend as part of their opposition to the Motion to Dismiss. Nevertheless, at this time, Plaintiffs' delay does not rise to the level of the delay in Union Pacific and rather than directly contradict prior allegations, Plaintiffs generally omit or abandon allegations. Moreover, in PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856 (9th Cir. 2007), the Ninth Circuit explained: "Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation." Id. at 859. Therefore, Defendant has not satisfied its burden of establishing prejudice and the Court declines to find Plaintiffs have engaged in bad faith litigation tactics at this time.

The Court cautions Plaintiffs, however, that such a delay without explanation could appear to be motivated by a desire to unnecessarily prolong the litigation. Moreover, the Court advises Plaintiffs it will not be well disposed to future requests for leave to amend. Ismail v.

County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) ("[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" (citations omitted)); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).

**C.     THE COURT FINDS LEAVE TO AMEND IS NOT FUTILE**

Defendant argues leave to amend would be futile because (a) Plaintiffs' Section 1983 claim is preempted by the SDWA; (b) the Proposed TAC is time-barred; and (c) Plaintiffs have failed to allege "joint action" sufficient to sue a private actor for acting "under color" of state law. Dkt. 77, Opp. at 3-8.

  **1.     Applicable Law**

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). "A court may deny leave to amend due to futility or legal insufficiency if the amendment would fail a motion to dismiss under Rule 12(b)(6)." Ewert v. eBay, Inc., 602 F. App'x 357, 359-60 (9th Cir. 2015)[2] (citing Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007) (citation omitted). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted).

  **2.     Judicial Notice**

"A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment. But a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (internal citations omitted); see also In re Korean Air Lines Co., 642 F.3d 685, 689 n.1 (9th Cir. 2011) (taking judicial notice of prior proceedings in federal and state courts); Fed. R. Evid. 201(b).

Defendant filed a Request for Judicial Notice in support of the Motion to Dismiss requesting the Court take judicial notice of the complaint in Norman Halstead, et al. v. Pacific Gas and Electric Company, et al., California Superior Court, County of San Bernardino, Case

---

[2] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

No. CIVDS1414116.  Dkt. 47-2.  Defendant argues the complaint is relevant to its statute of limitations argument because it shows when Plaintiffs had learned of their injury.  Dkt. 77, Opp. at 6-7.  The Court may take judicial notice of Plaintiffs' prior complaint in determining when a cause of action accrues to the extent it may show when Plaintiffs had knowledge of relevant facts.  Sangster v. Hall, No. EDCV 15-0873-JAK (AGR), 2016 WL 519543, at *4 (C.D. Cal. Jan. 7, 2016), report and recommendation adopted, 2016 WL 540748 (C.D. Cal. Feb. 8, 2016).

On September 12, 2016, Plaintiffs filed a Request for Judicial Notice in support of their Opposition to the Motion to Dismiss, requesting the Court take judicial notice of various documents filed in Riddle, et al. v. Pacific Gas & Electric Company, et al., San Bernardino County Superior Court, Case No. CIVDS1308429 (A1-A3); Halstead, et al. v. Pacific Gas and Electric Company, et al., San Bernardino County Superior Court, Case No. CIVDS1414116 (A4); and Panchev, et al. v. Pacific Gas and Electric Company, et al., San Bernardino County Superior Court, Case No. CIVDS1416980 (A5-A7).  Dkt. 51.  Plaintiffs argue documents A1 through A4 are offered for purposes of showing when the statute of limitations began running.  Dkt. 53.  Plaintiffs argue documents A5 through A7 are offered for the purpose of showing Defendant's "discriminatory animus."  Id.  The Court will take judicial notice of documents A1 thought A4 filed in Riddle and Halstead as it appears they may relate to Plaintiffs' knowledge of their injuries.  However, Defendant's alleged "discriminatory animus" is not relevant to the determination of any motion before the Court.  Hence, the Court denies Plaintiffs' Request for Judicial Notice of documents A5 through A7.

Plaintiffs filed four additional Requests for Judicial Notice.  Dkts. 62, 71, 75, 85.  As an initial matter, Plaintiffs fail to explain how the documents are relevant to any pending motion or even to the instant action and what the documents would prove if the Court granted Plaintiffs' Requests for Judicial Notice.  Further, to the extent Plaintiffs seek to prove the facts asserted in the documents, such facts are subject to reasonable dispute.  See Lee, 250 F.3d at 689.  Accordingly, the Court denies Plaintiffs' second, third, fourth, and fifth Requests for Judicial Notice without prejudice.

**The Court hereby cautions Plaintiffs that future filings that include exhibits containing irrelevant matter will be stricken.**  See Fed. R. Civ. P. 12(f), 41(b); Saenz v. Chavez, No. 1:11-CV-01872-SKO PC, 2013 WL 1832680, at *8 (E.D. Cal. May 1, 2013) ("If Plaintiff again submits an unnecessarily voluminous pile of paper which is not properly organized and labeled and which contains a multitude of irrelevant exhibits, the exhibits will be stricken in their entirety."); Dihz v. Mansanares, No. CV 06-1851 PHX MHM, 2007 WL 735557, at *1 (D. Ariz. Mar. 7, 2007) (striking irrelevant, unwarranted documents from the docket).

Additionally, the Court advises Plaintiffs it has access to true and correct copies of all relevant statutes, case law, and dockets of related cases.  Therefore, in future filings, Plaintiffs only needs to properly cite such statutes, case law, and dockets and briefly explain their relevance to a pending motion or pleading.  **Hence, future filings including superfluous copies of such documents will be stricken.**

///
///

### 3. Pre-emption

#### i. Applicable Law

In determining whether a statute preempts a Section 1983 claim, "[t]he crucial consideration is what Congress intended." City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120, 125 S. Ct. 1453, 161 L. Ed. 2d 316 (2005). "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 20, 101 S. Ct. 2615, 69 L. Ed. 2d 435 (1981). Additionally, the provision of "an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." Abrams, 544 U.S. at 121 (noting "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others"); see Sea Clammers, 453 U.S. at 20 ("It is hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies, including the two citizen-suit provisions.").

The SDWA establishes "an elaborate enforcement scheme," including that the Administrator may bring a civil action to compel SDWA compliance orders against violators of the SDWA. See Mattoon v. City of Pittsfield, 980 F.2d 1, 5 (1st Cir. 1992) (citing 42 U.S.C. § 300g-3(b), (g)(1)). In addition, "any person may commence a civil action on his own behalf – (1) against any person . . . who is alleged to be in violation of any requirement prescribed by or under [the SDWA]; [or] (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under [the SDWA] which is not discretionary with the Administrator." 42 U.S.C. § 300j-8(a).

The SDWA's establishment of an "express, private means of redress" demonstrates "Congress did not intend to leave open a more expansive remedy" under Section 1983. See Abrams, 544 U.S. at 121; see also Sea Clammers, 453 U.S. at 7 n.10, 20-21 n.31 (holding the "savings clause" does not preserve a Section 1983 action, finding the "savings clause" did not "refer . . . to a suit for redress of a violation of th[e] statutes [at issue]"). Hence, the SDWA preempts all other forms of federal relief for SDWA violations – including claims under Section 1983. Mattoon, 980 F.2d at 4 ("We have little hesitation in concluding that Congress occupied the field of public drinking water regulation with its enactment of the SDWA.").

#### ii. Analysis

As an initial matter, Defendant urges the Court to find amendment would be futile because "Plaintiffs cannot amend their complaint to avoid preemption without contradicting their earlier allegation that PG&E's alleged injection activities caused the purposed contamination of their drinking well." Dkt. 77, Opp. at 5. However, the cases Defendant cites all involve denying leave to amend without the benefit of a proposed new pleading. In analyzing whether the Proposed TAC would be futile, the Court can only disregard allegations that are "patently inconsistent" with prior pleadings. Shirley v. Univ. of Idaho, Coll. of Law, 800 F.3d 1193, 1194 (9th Cir. 2015) (reversing denial of leave to amend "because the allegations in the proposed second amended complaint cited by the district court were not so patently inconsistent with appellant's previous allegations as to warrant a screening dismissal"). Moreover, "[t]he district court has no free-standing authority to strike pleadings simply because it believes that a

party has taken inconsistent positions in the litigation." PAE, 514 F.3d at 859. "[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading." Id. at 860. Hence, the Court will consider the allegations in the Proposed TAC on their own terms without reference to the allegedly inconsistent allegations in prior pleadings.

Therefore, the Court must determine whether Plaintiffs are alleging a violation of the SDWA. Part B of the SDWA applies to "public water systems," while Part C of the SDWA requires the EPA to establish regulations to "prevent underground injection which endangers drinking water sources." 42 U.S.C. §§ 300g, 300h(b)(1). A "public water system" is "a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals." Id. § 300f(4)(A). "Underground injection endangers drinking water sources if such injection may result in the presence in underground water which supplies or can reasonably be expected to supply any public water system of any contaminant, and if the presence of such contaminant may result in such system's not complying with any national primary drinking water regulation or may otherwise adversely affect the health of persons." Id. § 300h(d)(2).

First, it is undisputed Plaintiffs' well from which they draw their drinking water is not part of a "public water system." Therefore, Part B of the SDWA is not applicable to Plaintiffs' claims. Second, Defendant concedes the Proposed TAC "carefully omits any mention of injection, and claims for the first time that the purported arsenic contamination was caused by crop irrigation." Dkt. 77, Opp. at 8. Therefore, because the operative pleading for purposes of Plaintiffs' Motion to Amend is the Proposed TAC, Part C of the SDWA is not applicable to Plaintiffs' claims. Hence, the Court finds Plaintiffs' Proposed TAC is not preempted by the SDWA, because the Proposed TAC does not allege a violation of the SDWA.

### 4. Statute of Limitations

The applicable statute of limitations for Plaintiffs' Section 1983 claim is two years. See Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (holding state personal injury limitation statute governs Section 1983 claims); Cal. Code Civ. Proc. § 335.1 (two-year personal injury statute of limitation). A Section 1983 "cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." Belanus v. Clark, 796 F.3d 1021, 1025 (9th Cir. 2015), cert. denied, 137 S. Ct. 109, 196 L. Ed. 2d 89 (2016), reh'g denied, 137 S. Ct. 489 (2016) (citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996)); see also Wallace, 549 U.S. at 388 (holding federal law determines when a cause of action accrues and when the statute of limitations begins to run for a Section 1983 claim). However, California's "discovery rule" of tolling, "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Bone v. City of Los Angeles, 471 F. App'x 620, 622 (9th Cir. 2012) (citing Fox v. Ethicon Endo–Surgery, Inc., 35 Cal.4th 797, 807, 27 Cal. Rptr. 3d 661, 110 P.3d 914 (2005)); see also TwoRivers v. Lewis, 174 F.3d 987, 991 (9th

Cir. 1999) (when federal courts borrow a state limitations period, the court also borrows the forum state's tolling rules).

Defendant argues Plaintiffs' claims are time-barred because Plaintiffs allege in their 2014 state court complaint that "they stopped using their land due to alleged 'poisoning' with substances including arsenic, *two years before filing their state court lawsuit in 2014*." Dkt. 77, Opp. at 6-7 (emphasis in original). Plaintiffs' state court complaint, filed on September 22, 2014, alleges "Plaintiffs ceased two years ago utilizing their Realty for any agricultural for profit purposes, other agricultural products, whether on open land or within sheds to grow by various technology due to poisoned ground waters with toxic substances, not limited to Arsenic." RJN, Ex. A at 4:19-21. However, this allegation is not inconsistent with Plaintiffs' later allegation that the discovery of the "poisoning of ground waters with Arsenic and Uranium" was "recent . . . less than a year ago," i.e., between September 22, 2013 and September 22, 2014. Id. at 15:19-23. Plaintiffs further allege Defendant has consistently concealed the contamination. Proposed TAC at 9.

The state court complaint was filed on September 22, 2014. RJN, Ex. A. The Complaint in this action was filed on April 13, 2016. Dkt. 1. Assuming the truth of Plaintiffs' allegations, it is possible they discovered the existence of Arsenic and Uranium in their groundwater after April 13, 2014, i.e., within two years of the filing of the Complaint in this action. Therefore, there appears to remain a question of fact regarding when Plaintiffs discovered or had reason to discover their injury was caused by Arsenic and Uranium poisoning. See Burdick v. Union Sec. Ins. Co., No. CV 07-4028 ABC (JCx), 2009 WL 4798873, at *10 (C.D. Cal. Dec. 9, 2009) ("When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application is generally a question of fact, properly decided as a matter of law only if the evidence . . . can support only one reasonable conclusion." (quoting Broberg v. Guardian Life Ins. Co. of Am., 171 Cal. App. 4th 912, 920-21, 90 Cal. Rptr. 3d 225 (2009))). Hence, construing the Proposed TAC in the light most favorable to Plaintiffs, there is insufficient evidence to prove at this time that Plaintiffs' claims are necessarily time-barred.

### 5. Joint Action

"To act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting see 'under color' of law for purposes of § 1983 actions." See Dennis v. Sparks, 449 U.S. 24, 27-28, 32, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); United States v. Price, 383 U.S. 787, 794, 86 S. Ct. 1152, 16 L. Ed. 2d 267 (1966)). In Dennis, after a judge enjoined the production of minerals from certain oil leases owned by plaintiffs, plaintiffs sued the judge, the corporation which had obtained the injunction, the sole owner of the corporation, and the two individual sureties on the injunction bond under Section 1983 alleging "the injunction had been corruptly issued as a result of a conspiracy between the judge and the other defendants, thus causing a deprivation of property, i.e., two years of oil production, without due process of law." Id. at 26. The U.S. Supreme Court found "the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge." Id. at 28. Hence, the Court held, "[u]nder these allegations, the private parties conspiring with the judge were acting

under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability." Id.

   Here, Defendant argues there is no allegation "of a connection between acts by the state actors and acts by PG&E." Dkt. 77, Opp. at 7. Defendant argues Plaintiffs allege "the state actors did nothing wrong." Id. However, Plaintiffs incorporate a letter into the Proposed TAC wherein the State Board acknowledges its ability to continue to require Defendant to clean up the contaminated aquifer. Moreover, Plaintiffs allege the State Board "is protecting the Defendant from prosecution" and has "concealed the facts" and "not informed Plaintiffs that drinking poisoned water with Arsenic, will cause severe damage to Plaintiffs' health," because Defendant paid the State Board millions of dollars. TAC Mem. at 13; Proposed TAC at 9. Construing the allegations in the Proposed TAC in the light most favorable to Plaintiffs, Plaintiffs have alleged the State Board was bribed by Defendant to protect Defendant from prosecution for contaminating Plaintiffs' water. As in Dennis, the allegations are that (a) an official act, i.e., "protecting the Defendant from prosecution," including through drafting reports and writing letters to Plaintiffs, (b) by a state actor, i.e., the State Board, (c) was the result of a conspiracy between the state actor and Defendant. While the Court acknowledges it will be difficult for Plaintiffs to prove such wrongful conduct occurred, at this stage, Plaintiffs have alleged "joint action" sufficient to sue Defendant for acting "under color" of state law.

   Therefore, the Court finds the Proposed TAC is not futile because it would not be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). See Ewert, 602 F. App'x at 359-60. The Court advises the parties it will be amenable to requests for staged discovery in the Joint Report pursuant to Federal Rule of Civil Procedure 26 in order to streamline resolution of this case.

V.

**ORDER**

   **IT IS THEREFORE ORDERED:**

1. Defendant's Motion to Dismiss the SAC [Dkt. 47] is DENIED as MOOT.

2. Plaintiffs' Motion to Amend [Dkt. 66] is GRANTED.

3. The Clerk of Court shall file Plaintiffs' Third Amended Complaint [Dkt. 66-1].